```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

        Plaintiff,
v.                                     Case No.:  8:12-cv-235-T-33MAP

KALOUST FINANCIAL, LLC, ET AL.,

        Defendants.
_____/
```

**ORDER**

This cause is before the Court pursuant to Plaintiff's Motion for Judgment on the Pleadings, filed on July 30, 2012. (Doc. # 24). On August 13, 2012, Defendants Stephen and Jackie Bleile (Doc. # 29) and Defendants Kaloust Financial, LLC, Richard Kaloust, and the Estate of Richard Kaloust (Doc. # 30) filed their responses in opposition to the motion. For the reasons that follow, the motion is due to be denied.

**I.  Factual Background and Procedural History**

The following factual discussion, taken from Plaintiff's Amended Complaint, is accepted as true for the purpose of addressing the motion. Plaintiff Nationwide Mutual Fire Insurance Co. issued a Business Owners Liability Insurance Policy to Defendant Kaloust Financial, LLC, Policy No. 77BO7268003001, with effective dates of July 11, 2008, to July 11, 2009 (the "Policy"). (Doc. # 12 at ¶ 11).

On or about May 20, 2009, Defendants Stephen and Jackie Bleile filed a wrongful death lawsuit in Missouri state court against Defendants Kaloust Financial, Richard Kaloust,[1] and Daniel Barbosa, among others, Case No. 09WA-CC0066-01 (the "Underlying Action"). (Id. at ¶ 9; Doc. # 12-1). A copy of the fourth amended complaint filed by the Bleiles is attached to Nationwide's Amended Complaint as Exhibit A (the "Underlying Complaint"). (Doc. # 12-1).

The Underlying Complaint alleges that on or about January 7, 2009, the Bleiles' son, Mitchell Bleile, was a passenger in a vehicle operated by Barbosa, who was acting at the time as an "agent" of Kaloust. (Id. at ¶¶ 16-17). According to the Underlying Complaint, while approaching an intersection, Barbosa intentionally disregarded a stop sign and proceeded into the intersection without stopping, causing another vehicle to strike the passenger's side of Barbosa's vehicle. (Id. at ¶¶ 19, 20). As a result of the impact, Mitchell Bleile sustained serious injuries and died from those injuries. (Id. at ¶ 21).

The Underlying Complaint alleges counts for negligence

---

[1] The parties collectively refer to Defendants Kaloust Financial, LLC, Richard Kaloust, and the Estate of Richard Kaloust as "Kaloust." The Court will likewise do so hereafter.

and negligence per se against Kaloust and Barbosa and counts for negligent hiring, negligent retention, and negligent supervision against Kaloust. (Id.).  Kaloust and Barbosa have sought liability coverage from Nationwide, including a defense and indemnity, for the Underlying Action pursuant to the Policy.  A copy of the Policy is attached to Nationwide's Amended Complaint as Exhibit B.  (Doc. ## 12-2, 12-3).

On February 3, 2012, Nationwide filed a three-count Complaint seeking declaratory judgment against Defendants Kaloust Financial LLC and the Bleiles.[2] (Doc. # 1). Nationwide filed an Amended Complaint on March 12, 2012, which added Richard Kaloust, the Estate of Richard Kaloust, and Daniel Barbosa as Defendants and added three counts against Barbosa. (Doc. # 12). Nationwide asserts that Policy conditions and exclusions preclude coverage for Kaloust and Barbosa and thus relieve Nationwide of the duty to defend and indemnify Kaloust and Barbosa in the Underlying Action.  (Id. at ¶ 12).  Specifically, Nationwide alleges that coverage is barred by the Policy's Workers Compensation and Similar Laws

---

[2] Nationwide asserts that the Bleiles are appropriately named as Defendants in this action because the Bleiles have an interest in any insurance coverage available to Kaloust and/or Barbosa should the Bleiles obtain a judgment against Kaloust and/or Barbosa in the Underlying Action. (Doc. # 12 at ¶ 14).

3

Exclusion (Counts I and IV), by the Policy's Employers Liability Exclusion (Counts II and V), and/or by the Policy's Aircraft, Auto or Watercraft Exclusion (Counts III and VI). (Doc. # 12). Nationwide seeks a declaration that it has no duty or obligation to defend or indemnify Kaloust and/or Barbosa in connection with the Underlying Action and seeks an award of its costs. (Id.).

Barbosa failed to appear in this action and a Clerk's default was entered against him on July 31, 2012. (Doc. # 27). Nationwide now seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. # 24).

## II. **Standard of Review**

Federal Rule of Civil Procedure 12(c) directs that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings may be granted "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998)(citing Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir. 1996) and Herbert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th

4

Cir. 1990)).  Judgment for the moving party is appropriate only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Doe v. Bd. of Cnty. Comm'rs, 815 F. Supp. 1448, 1449 (S.D. Fla. 1992).  When considering such a motion, the Court must "accept the facts alleged in the complaint as true and draw all inferences that favor the nonmovant."  Id.

The Court notes that the motion has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[3]  Rule 7(a) defines "pleadings" to include both the complaint and the answer; however, Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  If an attachment to a complaint or an answer is a written instrument, it is part of the pleadings and can be considered on a motion for judgment on the pleadings without the motion being converted into one for summary judgment.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th

---

[3] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(d) requires that "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Additionally, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.  Id.

5

Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). The incorporation by reference doctrine allows the Court to consider a document attached to the pleadings without converting a Rule 12(c) motion into a motion for summary judgment if the document is central to the claim and its authenticity is not challenged. Id.

Here, the Court has considered only the Amended Complaint, Exhibits A and B to the Amended Complaint (the Underlying Complaint and the Policy), and the Bleiles' Answer. It cannot be disputed that Exhibits A and B are central to Nationwide's claims against Defendants. The parties have not questioned the authenticity of these documents.

**III. Analysis**

    **A.    The Duty to Defend and the Duty to Indemnify**

Under Florida law, which the Court applies in this diversity case, the duty to defend is broader than the duty to indemnify. Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009). The decision of whether an insurer has a duty to defend "is determined solely by the claimant's complaint if suit has been filed." Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 9-10 (Fla. 2004). An insurer's duty to defend against a legal action is triggered

6

"when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, Ins., 908 So. 2d 435, 442-43 (Fla. 2005).

In contrast to the duty to defend, the duty to indemnify is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury. Underwriters at Lloyds London v. STD Enters., 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005). In this context,

> insurance contracts are to be construed in a manner that is reasonable, practical, sensible, and just. . . . Terms used in a policy are given their plain and ordinary meaning and read in the light of the skill and experience of ordinary people. Provisions that exclude or limit liability of an insurer are construed more strictly than provisions that provide coverage.

United States Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., 279 F. App'x 879, 880-81 (11th Cir. 2008)(internal citations omitted). Furthermore, if provisions in an insurance contract are "reasonably susceptible of more than one meaning, they are ambiguous and construed in favor of the insured. That rule applies if a genuine inconsistency, uncertainty, or ambiguity in meaning remains after a review of the plain language." Id. at 881.

### B. The Policy's Exclusions

The Policy provides, in pertinent part, as follows:

7

**B. Exclusions**

   1. **Applicable to Business Liability Coverage**

      This insurance does not apply to:

         \* \* \*

     d. **Workers' Compensation and Similar Laws**

        Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

     e. **Employer's Liability**

        "Bodily Injury" to:

        (1) An "employee" of the insured arising out of and in the course of:

            (a) Employment by the insured; or

            (b) Performing duties related to the conduct of the insured's business;

        \* \* \*

        This exclusion applies:

        (a) Whether the insured may be liable as an employer or in any other capacity; and

        (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

8

>                    * * *
>
>    g.   **Aircraft, Auto Or Watercraft**
>
>         "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operations and "loading and unloading."

(Doc. # 12-2 at 20, 22)(emphasis in original).  The Policy additionally provides:

> **C. Who Is An Insured**
>
>                    * * *
>
>    2.   Each of the following is also an insured:
>
>         a.   Your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:
>
>              (1)  "Bodily injury" or "personal injury":
>
>                   (a)  To you, . . . or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business.

9

(Id. at 25-26)(emphasis in original).

The Policy defines "employee" as follows:

**F. Liability and Medical Expenses Definitions**

* * *

5.  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

(Id. at 28)(emphasis in original).

C. **Applicability of the Policy Exclusions**

The applicability of the above exclusions turns on whether Mitchell Bleile and Barbosa constitute "employees" of Kaloust under the Policy. Nationwide contends that Bleile was an employee of Kaloust acting in the course of that employment or performing duties related to the conduct of Kaloust's business at the time of the accident, such that liability for the bodily injury he sustained is excluded under the Policy's Employer's Liability exclusion. (Doc. # 24 at ¶ 17). Additionally, Nationwide asserts that the Policy does not provide coverage for any obligation Kaloust may have to Bleile as an employee under workers' compensation or similar law. (Id.). Finally, Nationwide argues that Barbosa was also an employee of Kaloust at the time of the accident, which in turn made him an insured under the policy, such that the bodily injury to Bleile, arising out of the use of the vehicle that

10

was being operated by Barbosa, is excluded from coverage by the Policy's Aircraft, Auto or Watercraft Exclusion. (Id. at ¶ 24).

In response, Kaloust and the Bleiles argue that the above-quoted Policy exclusions are inapplicable to the Underlying Action at this point because neither Mitchell Bleile nor Barbosa are alleged to be employees of Kaloust in the Underlying Complaint. (Doc. # 28).[4] Rather, the Underlying Complaint alleges only that Barbosa and Kaloust were "engaged in a principal-agent relationship" at the time of the accident. (Doc. # 12-1 at ¶ 22). In their Answer, the Bleiles have admitted "that Mitchell Bleile was . . . an 'agent' of Richard Kaloust and Kaloust Financial, LLC, as that term is understood, acting in the course and scope of that agency at the time of the subject accident." (Doc. # 14 at ¶ 17). However, nowhere does the Underlying Complaint, nor Nationwide's Amended Complaint, allege that Bleile or Barbosa were employees of Kaloust. The Bleiles and Kaloust state that had such an allegation been made, they would have expressly

---

[4] The Bleiles' response was filed twice, first on August 10, 2012 (Doc. # 28), and again on August 13, 2012 (Doc. #29). Kaloust filed a response that is essentially identical to that of the Bleiles. (Doc. # 30). Accordingly, for simplicity, the Court will cite only to the first-filed response at Docket # 28.

11

denied it because the evidence would provide "absolutely no support for any such employment relationship." (Doc. # 28 at 5).

The Court agrees with the Bleiles and Kaloust and finds that Nationwide is not entitled to judgment on the pleadings. As the Bleiles and Kaloust point out, the Policy's definition of "employee" does not include "agents" of Kaloust, but rather, states only that the term "employee" includes a "leased worker" but not a "temporary worker."[5] (Doc. # 12-2 at 28). The Court agrees with Kaloust and the Bleiles that the terms "agent" and "employee" are not interchangeable under Florida law. Rather, as explained in Estate of Miller v. Thrifty Rent-A-Car Sys., Inc., 637 F. Supp. 2d 1029, 1037 (M.D. Fla. 2009),

> an "employee" is a subspecies of agent "whose principal controls or has the right to control the manner and means of the agent's performance of work." Thus, "employee" is a narrower category than "agent" . . . .

Id. (quoting Restatement (Third) of Agency § 7.07(3)(a)).

Thus, because the Underlying Complaint alleges only that Barbosa was an agent, but not an employee, of Kaloust and the

---

[5] There does not appear to be any dispute that neither Bleile nor Barbosa were "leased workers" as that term is defined by the Policy.

12

Bleiles have admitted only that Mitchell Bleile was an agent of Kaloust, the Court cannot say as a matter of law that the Policy's exclusions necessarily preclude liability for the Underlying Action. The Court finds the case of <u>Category 5 Management Group, LLC v. Companion Property & Casualty Insurance Co.</u>, 76 So. 3d 20 (Fla. 1st DCA 2011), on point and instructive.

In <u>Category 5</u>, the court considered the applicability of an identical Aircraft, Auto or Watercraft Exclusion which excluded coverage for bodily injuries arising out of the use of an automobile operated by an insured, which term was likewise defined to include the named insured's "employees." <u>Id.</u> at 23-24. The insurer argued that the automobile driver constituted an employee under the policy based on the allegation in the underlying complaint that the automobile driver "was hired by or under the direction, control and supervision" of the insured's shareholders or managers. <u>Id.</u> at 24. However, the court rejected this argument, stating that, "While this allegation might acknowledge a more generalized principal-agent relationship between appellant and [the automobile driver], there is nothing that explicitly indicates the existence of an employer-employee relationship." <u>Id.</u> Thus, the court found that the underlying complaint alleged

13

facts which brought the lawsuit outside of the auto exclusion thereby triggering the insurer's duty to defend the insured in the underlying action.  Id.

As in Category 5, the Underlying Complaint alleges only a "generalized principal-agent relationship" between Barbosa and Kaloust but does not "explicitly indicate[] the existence of an employer-employee relationship." Id.  Thus, the Court finds that Nationwide has not proven as a matter of law that Barbosa was an insured under the Policy such that the Aircraft, Auto or Watercraft Exclusion would apply to preclude coverage for the Underlying Action.[6]  Likewise, as the Defendants have admitted only that Mitchell Bleile was an agent, but not an employee, of Kaloust at the time of the accident, the Court finds that Nationwide has failed to establish as a matter of law that Bleile was an employee at

---

[6] Furthermore, the Court finds it curious that Nationwide does not address subparagraph 2.a.(1)(a) of the Policy's definition of who is an insured, which states that Kaloust's "employees" are not insureds for "'Bodily injury' or 'personal injury' . . . to a co-'employee' while that co-'employee' is either in the course of his or her employment or performing duties relating to the conduct of your business." (Doc. # 12-2 at 26).  Thus, it may be the case that even if Bleile and Barbosa were deemed to be "employees" of Kaloust under the Policy as argued by Nationwide, the above-quoted provision could apply to remove Barbosa from the definition of an "insured," which in turn would render the Policy's Aircraft, Auto or Watercraft Exclusion inapplicable.

14

the time of the accident in order for the Employer's Liability exclusion to be triggered in this case.

Finally, as workers' compensation is generally available only to those who qualify as employees under the relevant workers' compensation statute, and there are no allegations in the Underlying Complaint suggesting that the Bleiles have sought or received, or would be eligible to receive, workers' compensation benefits from Kaloust for the bodily injury Mitchell Bleile sustained in the accident, the Court finds that Nationwide has failed to establish at this juncture that the Policy's Workers' Compensation and Similar Laws exclusion applies to preclude coverage for the Underlying Action. Nationwide's motion for judgment on the pleadings is denied accordingly.

The Court cautions, however, that its decision should not be interpreted as a dispositive ruling that Nationwide <u>does</u> in fact have a duty to defend and indemnify Kaloust and/or Barbosa in the Underlying Action. Such issue is not appropriately before the Court at this time. Rather, by its holding, the Court determines only that Nationwide has failed to establish at this juncture that it <u>does not</u> have a duty to defend and indemnify Kaloust and/or Barbosa in the Underlying Action.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff's Motion for Judgment on the Pleadings (Doc. # 24) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida this <u>18th</u> day of December, 2012.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record

16