UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

       Plaintiff,

v.                              Case No.:  8:12-cv-235-T-33MAP

KALOUST FINANCIAL, LLC, ET AL.,

       Defendants.

_____/

## ORDER

This cause is before the Court pursuant to Plaintiff Nationwide Mutual Fire Insurance Co.'s Motion for Final Summary Judgment (Doc. # 36) and Defendants Stephen and Jackie Bleile's Dispositive Motion for Summary Judgment (Doc. # 38), both filed on January 11, 2013.  The parties filed responses in opposition to the other's motion on January 25, 2013. (Doc. ## 42, 43).  Also before the Court is Nationwide's Motion to Strike (Doc. # 39), filed on January 18, 2013, to which the Bleiles filed a response in opposition on February 4, 2013 (Doc. # 46).

After due consideration and for the reasons that follow, Nationwide's Motion to Strike is granted in part and denied in part, Nationwide's Motion for Summary Judgment is denied, and the Bleiles' Motion for Summary Judgment is granted.

## I.   Factual Background and Procedural History

Nationwide issued a Business Owners Liability Insurance Policy to Defendant Kaloust Financial, LLC, Policy No. 77BO7268003001, with effective dates of July 11, 2008, to July 11, 2009 (the "Policy"). (Doc. # 12 at ¶ 11).

On or about May 20, 2009, Defendants Stephen and Jackie Bleile filed a wrongful death lawsuit in Missouri state court against Defendants Kaloust Financial, Richard Kaloust,[1] and Daniel Barbosa, among others, Case No. 09WA-CC0066-01 (the "Underlying Action"). (Id. at ¶ 9; Doc. # 12-1).  A copy of the fourth amended complaint filed by the Bleiles is attached to Nationwide's Motion for Summary Judgment as Exhibit A (the "Underlying Complaint").  (Doc. # 36-1).

The Underlying Complaint alleges that on or about January 7, 2009, the Bleiles' son, Mitchell Bleile, was a passenger in a vehicle operated by Barbosa, who was acting at the time as an "agent" of Kaloust. (Id. at ¶¶ 16-17).  According to the Underlying Complaint, while approaching an intersection, Barbosa intentionally disregarded a stop sign and proceeded into the intersection without stopping, causing another vehicle, driven by Perle Avery, to strike the passenger's side

---

[1] The parties collectively refer to Defendants Kaloust Financial, LLC, Richard Kaloust, and the Estate of Richard Kaloust as "Kaloust." The Court will likewise do so hereafter.

2

of Barbosa's vehicle. (Id. at ¶¶ 19, 20).  As a result of the impact, Mitchell Bleile sustained serious injuries and died from those injuries. (Id. at ¶ 21).

The Underlying Complaint alleges counts for negligence and negligence per se against Kaloust and Barbosa and counts for negligent hiring, negligent retention, and negligent supervision against Kaloust. (Id.).  Kaloust and Barbosa have sought liability coverage from Nationwide for the Underlying Action pursuant to the Policy.

On February 3, 2012, Nationwide filed a three-count Complaint seeking declaratory judgment against Defendants Kaloust Financial LLC and the Bleiles.[2] (Doc. # 1). Nationwide filed an Amended Complaint on March 12, 2012, which added Richard Kaloust, the Estate of Richard Kaloust, and Daniel Barbosa as Defendants and added three counts against Barbosa. (Doc. # 12). Nationwide asserts that Policy conditions and exclusions preclude coverage for Kaloust and Barbosa and thus relieve Nationwide of the duty to defend and indemnify Kaloust and Barbosa in the Underlying Action.  (Id.

---

[2]  Nationwide asserts that the Bleiles are appropriately named as Defendants in this action because the Bleiles have an interest in any insurance coverage available to Kaloust and/or Barbosa should the Bleiles obtain a judgment against Kaloust and/or Barbosa in the Underlying Action. (Doc. # 12 at ¶ 14; Doc. # 36 at 8).

at ¶ 12).  Specifically, the Amended Complaint alleges that coverage is barred by the Policy's Workers Compensation and Similar Laws Exclusion (Counts I and IV), by the Policy's Employers Liability Exclusion (Counts II and V), and/or by the Policy's  Aircraft, Auto or Watercraft Exclusion (Counts III and VI).  (Doc. # 12).  Nationwide seeks a declaration that it has no duty or obligation to defend or indemnify Kaloust and/or Barbosa in connection with the Underlying Action and seeks an award of its costs. (Id.).

Barbosa failed to appear in this action and a Clerk's default was entered against him on July 31, 2012. (Doc. # 27).

Nationwide filed a Motion for Judgment on the Pleadings on July 30, 2012. (Doc. # 24).  On December 18, 2012, the Court entered an Order denying Nationwide's Motion. (Doc. # 35).  Nationwide and the Bleiles filed cross Motions for Summary Judgment on January 11, 2013. (Doc. ## 36, 38).  Thereafter, Nationwide filed a Motion to Strike several of the depositions the Bleiles filed in support of their Motion for Summary Judgment. (Doc. # 39).  These motions are now before the Court.

## II.  Motion to Strike

Nationwide requests the Court to strike three depositions filed by the Bleiles in support of their Motion for Summary

4

Judgment.  Nationwide asserts that two of the depositions --
those of Defendants Richard Kaloust (Doc. ## 38-16, 38-17, 38-
18, 38-19, 38-20, 38-21) and Barbosa (Doc. ## 38-13, 38-14,
38-15) -- should be stricken because they were taken in the
Underlying Action, which Nationwide argues renders them
inadmissable hearsay in this case. Nationwide requests that a
third deposition, that of non-party Gregory Kempton (Doc. ##
38-11, 38-12), be stricken because it was conducted after the
expiration of the discovery deadline in this case.  The Court
will address each deposition below.

### A.   Deposition of Richard Kaloust

Generally, "any evidence which is admissible at trial can
be used on summary judgment." Beiswenger Enters. Corp. v.
Carletta, 46 F. Supp. 2d 1297, 1299 (M.D. Fla. 1999).
"Whether to admit a deposition from a prior lawsuit is vested
in the . . . court's sound discretion." In re Paramount
Payphones, Inc., 256 B.R. 341, 343 (Bankr. M.D. Fla.
2000)(citations omitted).

At the summary judgment stage, a party may rely on
deposition testimony from a separate action where the prior
case involved the same subject matter between the same
parties, or their representatives or predecessors in interest.
Fed. R. Civ. P. Rule 32(a)(8).  Rule 32(a)(8) further provides

that "A deposition previously taken may also be used as allowed by the Federal Rules of Evidence."

Testimony from a prior proceeding is generally considered hearsay under the Federal Rules of Evidence. However, Rule 804(b)(1), Fed. R. Evid., provides that where a declarant is unavailable as a witness, former testimony of that declarant is not excluded by the hearsay rule if the party against whom the testimony is now offered, or its predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. "[C]ourts have stated that Fed. R. Civ. P. 32(a)[(8)] and Fed. R. Evid. 804(b)(1) should be construed together to resolve the question of a deposition's admissibility." <u>Wallace v. City of Tarpon Springs</u>, No. 8:05-cv-979, 2007 WL 128839, at *2 (M.D. Fla. Jan. 12, 2007)(citations omitted).

There is no dispute that Richard Kaloust's death renders him an unavailable witness in this case. Nationwide also does not dispute that Kaloust's deposition addressed the same issue presently in dispute -- whether Mitchell Bleile and Barbosa were employees of Kaloust. However, Nationwide argues that Kaloust's prior deposition testimony should not be considered in this case because Nationwide was not a party to the Underlying Action and thus, it did not have the opportunity to

develop Kaloust's testimony by direct, cross, or redirect examination as required for admissibility under Rule 804(b)(1).

In response, the Bleiles argue that "the Bleiles . . . may be considered predecessors in interest [to Nationwide] who had sufficient opportunity and similar motive to develop Kaloust's testimony in his deposition." (Doc. # 39). The Court agrees.

"The modern test does not require privity between the current party and the party who participated in the prior proceeding. A previous party having like motive to develop the testimony about the same material facts is a predecessor in interest to the present party - privity is not the gravaman of Rule 804(b)(1) analysis." Hynix Semiconductor Inc. v. Rambus, Inc., 250 F.R.D. 452, 458 (N.D. Cal. 2008)(quoting Jones, Rosen, Wegner & Jones, RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL TRIAL & EVIDENCE ¶ 8:3061 (The Rutter Group 2007)).  Thus, the Bleiles may be deemed a predecessor in interest to Nationwide for purposes of Rule 804(b)(1) if they had a similar motive to develop Kaloust's testimony in the Underlying Action about the same material facts presently in dispute in this case.

In this action, Nationwide seeks a declaration that certain Policy provisions preclude coverage for the Underlying Action.  The applicability of the relevant provisions turns on whether Bleile and Barbosa were employees of Kaloust.  The operative complaint in the Underlying Action (Doc. # 36-1) indicates that the Bleiles seek to hold Kaloust vicariously liable under the doctrine of respondeat superior, which would necessarily require a determination of whether Barbosa was an employee, agent, or independent contractor of Kaloust.  <u>See Blunkall v. Heavy & Specialized Haulers, Inc.</u>, No. SD 31526, 2013 WL 1194845 (Mo. App. S.D. Mar. 25, 2013)("The distinction between 'agent,' 'servant,' 'employee,' and 'independent contractor' is important because it determines liability.  An employer is liable under the theory of respondeat superior for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency. . . . [L]iability of an independent contractor cannot flow from a theory of respondeat superior.").[3]  Thus, the Court determines that the Bleiles' counsel had a sufficiently similar motive to, and did in fact, question Kaloust in depth

---

[3] As the Underlying Action is pending in Missouri state court, the Court presumes that Missouri law would apply to this issue.

regarding the same material facts of Barbosa's and Bleile's employment status with Kaloust, such that Kaloust's prior deposition testimony, on this issue at least, will be allowed in this case.

Alternatively, even if the Bleiles cannot be considered "predecessors in interest" to Nationwide, the Court concludes that Kaloust's former testimony would fall under the hearsay residual exception provided by Rule 807, Fed. R. Evid.[4] Because Kaloust's prior testimony was given under oath, it has equivalent circumstantial guarantees of trustworthiness as if it had been given under oath in this case; it is offered as evidence of the material facts of Barbosa's and Bleile's employment status with Kaloust; and it is more probative on this issue than any other evidence. Finally, the Court determines that admitting Kaloust's former testimony will best serve the purposes of these rules and the interests of justice

---

[4]   Rule 807 provides that "[u]nder the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."

in this case.  Accordingly, Nationwide's Motion to Strike the deposition of Richard Kaloust is denied.

### B.  **Deposition of Daniel Barbosa**

Nationwide also seeks to strike the Bleiles' filing of Barbosa's deposition that was conducted in the Underlying Action.  Unlike Richard Kaloust, however, Barbosa remains available as a witness in this case and was in fact deposed again in this case.

Noting that Barbosa testified in this case that his memory was affected by the accident, the Bleiles argue that "Barbosa's lack of memory renders him an unavailable witness for this testimony's subject matter."  (Doc. # 46 at 6).  The Court is not convinced.

Rule 804(a)(3), Fed. R. Evid., provides that a declarant is considered unavailable as a witness if he "testifies to not remembering the subject matter."  In his deposition for the present case, Barbosa testified that he did not remember receiving interrogatories in the Underlying Action because "[his] memory is not what you would call great." (Doc. # 38-9 at 22). Barbosa continued, explaining that he experienced some "brain injury" as a result of the accident which significantly affected his memory, and that "[t]here is a big chunk of [his] life that [he] do[esn't] recall at all."  (Id.).  While this

testimony reflects that Barbosa may have experienced some memory loss in general, it does not rise to the level of constituting testimony that Barbosa does not remember the subject matter of this action.  To the contrary, Barbosa testified at length in his deposition in this case regarding his employment status with Kaloust.

Accordingly, the Court determines that Barbosa is not an unavailable party, such that his deposition given in the Underlying Action is not admissible under Rule 804(b)(1) in this case.  Furthermore, the Court determines that the deposition does not fall under the hearsay residual exception because it is not more probative on the point for which it is offered than any other evidence, given that Barbosa's deposition in this case and live testimony at trial are likely more or at least equally probative on the relevant issue. Thus, the Court grants Nationwide's Motion to Strike Barbosa's former testimony and will not consider it in the Court's summary judgment analysis.  However, to the extent that any particular statements within the deposition may be admissible under other Rules of Evidence -- as a prior inconsistent statement given under oath for example -- the Court will determine such issues on an individual basis if and when they arise at trial.

C.   **Deposition of Gregory Kempton**

Finally, Nationwide requests the Court to strike the deposition of Kempton taken in this case based on the fact that it was conducted on January 3, 2013, three days after the December 31, 2012, discovery deadline in this case.

In response, the Bleiles explain that:

> Kempton's deposition was set multiple times before the discovery deadline, but was postponed in order to accommodate Mr. Kempton and his attorney. Counsel for Nationwide explicitly agreed to the January 3 date, without giving any indication that it would object to the deposition's admissibility until after the start of the deposition. If counsel for Nationwide had not explicitly agreed to the date, or had indicated in advance that it intended to object as taking place after the discovery deadline, then Defendants could have ensured that the deposition took place earlier. As it stands, Nationwide had months of advance notice that Defendants intended to take this deposition, agreed to the deposition date, and has not been prejudiced at all by the fact that the deposition took [place] three days after the discovery deadline.

(Doc. # 46 at 2-3).

The Court takes case management deadlines seriously and expects all parties to do likewise and conscientiously abide by them.  The Court furthermore requires any party who needs a deadline extension to first request and receive permission from the Court for the extension; agreements between the parties are insufficient to alter a case management deadline.

See Rule 16(b)(4), Fed. R. Civ. P. ("A schedule may be modified only for good cause and with the judge's consent."). Thus, the Court does not condone the Bleiles' failure to request an extension of the discovery deadline from the Court prior to conducting Kempton's deposition after the deadline.

Nonetheless, "[t]he purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." Whittaker Corp. v. Execuair Corp., 736 F.2d 1341, 1347 (9th Cir. 1984). Generally, "[a] discovery cutoff date does not, however, affect admissibility of evidence obtained outside of the discovery process of the case in which the cutoff is ordered." Id. Accordingly, given the circumstances of Kempton's deposition described above, including the fact that the deposition was rescheduled several times to accommodate the non-party witness and was conducted just three days after the discovery cutoff, and that Nationwide agreed to the date, the Court determines that striking the deposition is a severe sanction not warranted in this case. Therefore, Nationwide's Motion to Strike is denied as to Kempton's deposition.

III. **Motions for Summary Judgment**

    A.    **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

14

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

### B.   <u>The Duty to Defend and the Duty to Indemnify</u>

Under Florida law, which the Court applies in this diversity case, the duty to defend is broader than the duty to indemnify.  <u>Sinni v. Scottsdale Ins. Co.</u>, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009).  The decision of whether an insurer has a duty to defend "is determined solely by the claimant's complaint if suit has been filed." <u>Higgins v. State</u>

15

Farm Fire & Cas. Co., 894 So. 2d 5, 9-10 (Fla. 2004).   An
insurer's duty to defend against a legal action is triggered
"when the complaint alleges facts that fairly and potentially
bring the suit within policy coverage." Jones v. Fla. Ins.
Guar. Ass'n, Ins., 908 So. 2d 435, 442-43 (Fla. 2005).

In contrast to the duty to defend, the duty to indemnify
is not determined by reference to the claimant's complaint,
but rather by reference to the actual facts and circumstances
of the injury.   Underwriters at Lloyds London v. STD Enters.,
395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005).   In this context,

> insurance contracts are to be construed in a manner
> that is reasonable, practical, sensible, and just.
> . . . Terms used in a policy are given their plain
> and ordinary meaning and read in the light of the
> skill and experience of ordinary people.
> Provisions that exclude or limit liability of an
> insurer are construed more strictly than provisions
> that provide coverage.

United States Fire Ins. Co. v. Freedom Vill. of Sun City Ctr.,
279 F. App'x 879, 880-81 (11th Cir. 2008)(internal citations
omitted).   Furthermore, if provisions in an insurance contract
are "reasonably susceptible of more than one meaning, they are
ambiguous and construed in favor of the insured.   That rule
applies if a genuine inconsistency, uncertainty, or ambiguity
in meaning remains after a review of the plain language." Id.
at 881.

16

C.    **The Policy's Relevant Provisions**

The Policy provides, in pertinent part, as follows:

**B. Exclusions**

1.    **Applicable to Business Liability Coverage**

This insurance does not apply to:

* * *

d.    **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.    **Employer's Liability**

"Bodily Injury" to:

(1)    An "employee" of the insured arising out of and in the course of:

(a)    Employment by the insured; or

(b)    Performing duties related to the conduct of the insured's business;

* * *

This exclusion applies:

(a)    Whether the insured may be liable as an employer or in any other capacity; and

17

(b)  To  any  obligation  to
     share  damages  with  or
     repay  someone  else  who
     must pay damages because
     of the injury.

         *  *  *

g.  **Aircraft, Auto Or Watercraft**

    "Bodily injury" or "property damage"
    arising  out  of  the  ownership,
    maintenance, use or entrustment to
    others  of  any  aircraft,  "auto"  or
    watercraft owned or operated by or
    rented or loaned to any insured. Use
    includes operations and "loading and
    unloading."

(Doc. # 38-2 at 21, 23)(emphasis in original).  The Policy

additionally provides:

**C. Who Is An Insured**

         *  *  *

2.  Each of the following is also an insured:

a.  Your "employees" . . . but only for
    acts  within  the  scope  of  their
    employment  by  you  or  while
    performing  duties  related  to  the
    conduct of your business.  However,
    none  of  these  "employees"  is  an
    insured for:

    (1)  "Bodily  injury"  or  "personal
         injury":

         (a)  To you, . . . or to
              a   co-"employee"
              while   that   co-
              "employee" is either
              in the course of his

18

> > > or her employment or
> > > performing    duties
> > > related    to    the
> > > conduct    of    your
> > > business.

(Doc. # 38-3 at 3-4)(emphasis in original).

The Policy defines "employee" as follows:

### F. Liability and Medical Expenses Definitions

* * *

> 5.    "Employee" includes a "leased worker."
> "Employee" does not include a "temporary
> worker."

(Id. at 6)(emphasis in original).

### D.    Applicability of the Policy's Exclusions

### 1.    Employer's Liability Exclusion

By its terms, the Policy does not apply to bodily injury to an "employee" of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business. (Doc. # 38-2 at 21). Thus, the applicability of the exclusion depends upon whether Mitchell Bleile was an "employee" of Kaloust. Nationwide asserts that Bleile was an employee of Kaloust, while the Bleiles aver that he was not.

The Policy's definition of "employee" provides only that the term "employee" includes a "leased worker" but does not include a "temporary worker." (Doc. # 38-3 at 6). There is no

dispute that Bleile was not a "leased worker" nor a "temporary worker" as those terms are defined by the Policy.

The Underlying Complaint does not include any allegations regarding Mitchell Bleile's employment status with Kaloust. In their Answer filed in this case, the Bleiles have admitted only "that Mitchell Bleile was . . . an 'agent' of Richard Kaloust and Kaloust Financial, LLC, as that term is understood, acting in the course and scope of that agency at the time of the subject accident." (Doc. # 14 at ¶ 17). However, nowhere does the Underlying Complaint, nor Nationwide's Amended Complaint, allege that Bleile was an employee of Kaloust.

As the Court has previously determined in denying Nationwide's Motion for Judgment on the Pleadings, allegations of a general principal-agent relationship are insufficient to establish an employer-employee relationship, because the terms "agent" and "employee" are not interchangeable under Florida law.  Rather, an "'employee' is a subspecies of agent 'whose principal controls or has the right to control the manner and means of the agent's performance of work.'  Thus, 'employee' is a narrower category than 'agent.'" Estate of Miller v. Thrifty Rent-A-Car Sys., Inc., 637 F. Supp. 2d 1029, 1037

(M.D. Fla. 2009)(quoting Restatement (Third) of Agency §
7.07(3)(a)).

Thus, the question becomes whether Bleile may be
considered an "employee" of Kaloust under the plain and
ordinary meaning of that term based on the facts and evidence
presented in this case.  Under Florida law, to determine
whether a person is an employee or an independent contractor,
a court considers the following factors:

> (a)  the extent of control which, by the agreement,
>      the master may exercise over the details of
>      the work;
> (b)  whether or not the one employed is engaged in
>      a distinct occupation or business;
> (c)  the kind of occupation, with reference to
>      whether, in the locality, the work is usually
>      done under the direction of the employer or by
>      a specialist without supervision;
> (d)  the skill required in the particular
>      occupation;
> (e)  whether the employer or the workman supplies
>      the instrumentalities, tools, and the place of
>      work for the person doing the work;
> (f)  the length of time for which the person is
>      employed;
> (g)  the method of payment, whether by the time or
>      by the job;
> (h)  whether or not the work is part of the regular
>      business of the employer;
> (i)  whether or not the parties believe they are
>      creating the relationship of master and
>      servant; and
> (j)  whether the principal is or is not in
>      business.

Victoria Select Ins. Co. v. RCVR Logistics Corp., No. 11-
23976-CIV, 2012 WL 5818142, at *3 (S.D. Fla. Nov. 15,

2012)(citing <u>Kane Furniture Corp. v. Miranda</u>, 506 So. 2d 1061, 1063 (Fla. 2d DCA 1987)).

The Bleiles assert, and the Court agrees, that Nationwide has failed to demonstrate that Mitchell Bleile was an employee of Kaloust.   All of Nationwide's arguments in its Motion and response, and the evidence Nationwide has filed in support, are focused on Barbosa's employment relationship with Kaloust, not Bleile's.   Indeed, Nationwide relies heavily on Barbosa's deposition testimony (Doc. # 37-1), in which Barbosa testified that Kaloust hired, trained, and supervised him, in support of its contention that Barbosa was an employee of Kaloust. (Doc. # 36 at 16-18). However, whether Barbosa was an employee of Kaloust is irrelevant to the issue of whether the Employer's Liability Exclusion applies, because the exclusion applies only if *Bleile* was an employee of Kaloust.

Barbosa's deposition testimony -- the only evidence filed by Nationwide in support of its Motion -- is insufficient to create a genuine issue of material fact regarding Bleile's employment status.   The deposition mentions Bleile only a handful of times, including testimony that Bleile was working out of one of Kaloust's offices (Doc. # 37-1 at 26:8, 40:17-18) and that Richard Kaloust directed Barbosa to take Bleile

on the trip during which the accident occurred (Id. at 39:13-21, 44:15-17).

However, the evidence supplied by the Bleiles in support of their Motion establishes that Bleile was not an employee of Kaloust.  In his deposition in the Underlying Action, Richard Kaloust was specifically questioned about Mitchell Bleile's employment status with Kaloust Financial and testified as follows:

> Q:   On January 7th of 2009, what was the relationship between Mitch Bleile and Kaloust Financial, LLC?
> A:   There is no relationship.
> Q:   Okay.  Is it true that on January 7th of 2009, Mitchell Bleile was not an agent of Kaloust Financial, LLC?
> A:   Correct.  He was not an agent.
> Q:   Okay.  Is it true, sir, that on January 7th of 2009, Mitch Bleile was not an employee of Kaloust Financial, LLC?
> A:   Correct.  He was not an employee of Kaloust Financial.
> Q:   And as a corporate represent (sic) of Kaloust Financial, LLC, is it your testimony that there was no agency, employment or business relationship between Mitch Bleile and Kaloust Financial, LLC, on January 7th of 2009?
> A.   Correct.

(Doc. # 38-17 at 79:11-80:4).  Kaloust further explained that at the time of the accident, Mitchell Bleile was under "precontract" with American United Life, meaning "in general terms that he is in training to eventually become a career agent."  (Id. at 107:2-3, 14, 17-18).  Kaloust testified that

Bleile was hired by an American United Life career agent, Christopher Labadie, who was working out of Kaloust's offices at that time, and that Bleile was given a cubicle in Kaloust's offices to work out of. (Id. at 108:25-109:9, 109:25-110:2). Kaloust explained that Bleile went on the trip to Missouri with Barbosa to gain more experience after Kaloust personally asked him if he would like to go.  (Id. at 114:10-13). However, Kaloust did not pay for the trip expenses and informed Bleile that he would be responsible for the costs of the trip.  (Id. at 116:4-7). Finally, Kaloust testified that his company never provided any health insurance or other insurance benefits or workers' compensation coverage to any of the insurance agents working out of Kaloust's offices, including Bleile.  (Id. at 117:25-118:16).

Nationwide has not introduced any evidence to refute Kaloust's sworn testimony that Bleile was not an employee of Kaloust at the time of the accident.  Nationwide has not introduced any other evidence such as tax forms, employment contracts, or the like, which call into question the accuracy of Kaloust's assertions.  Simply, Nationwide has not provided any evidence which raises a genuine issue of material fact as to Bleile's employment status with Kaloust based on the factors outlined above.  Accordingly, the Court finds that

Nationwide has failed to meet its burden of proving the applicability of the Policy's Employer's Liability Exclusion and that the Bleiles have shown as a matter of law that the exclusion does not apply based on the facts of this case. Thus, the Court grants summary judgment on this issue in favor of the Bleiles.

### 2. Workers' Compensation and Similar Laws Exclusion

Nationwide also seeks a summary judgment determination that the Policy's Workers' Compensation and Similar Laws Exclusion precludes coverage for the claims in the Underlying Action, while the Bleiles request a ruling that the exclusion is inapplicable to the Underlying Action. The Court agrees with the Bleiles.

The Policy states that the insurance "does not apply to . . . any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (Doc. # 38-2 at 21). However, Nationwide has not supplied any evidence suggesting that the Bleiles are seeking to recover in the Underlying Action any amounts Kaloust may owe Bleile under any workers' compensation or similar law. Rather, the Underlying Complaint seeks damages only for Kaloust's alleged negligence resulting in

their son's wrongful death.  Nationwide has not provided any evidence indicating that the Bleiles have sought or received any workers' compensation benefits from Kaloust separate and apart from the Underlying Action.  Furthermore, Nationwide has not supplied any evidence establishing that the Bleiles would in fact be entitled to recover workers' compensation benefits on their son's behalf from Kaloust were they to file such a claim.  Indeed, Richard Kaloust testified in the Underlying Action that Kaloust did not provide any workers' compensation coverage for Mitchell Bleile. (Doc. # 38-17 at 120:1-4). Furthermore, as discussed above, Nationwide has failed to establish that Bleile was even an employee of Kaloust, a requirement for recovering any workers' compensation benefits from Kaloust under Missouri law. See State ex rel. Tri-County Elec. Co-op. Ass'n v. Dial, 192 S.W. 3d 708, 711 (Mo. 2006)("As to the employer, the only two questions to determine whether workers' compensation applies are whether the injured person was an employee and whether the injury occurred 'by accident arising out of and in the course of . . . employment.'").

"When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy

exclusion and are subject to no other reasonable interpretation." Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So. 3d 565, 574 (Fla. 1st DCA 2010)(citations omitted). Nationwide has failed to carry its burden here. Rather, the allegations in the Underlying Complaint establish that Kaloust's potential liability to the Bleiles arises only from the third-party, wrongful death negligence claims they have brought against Kaloust, and not from any obligation under a workers' compensation or similar law. As Nationwide has failed to create a genuine issue of material fact as to the applicability of the Policy's Workers' Compensation and Similar Laws Exclusion, the Court determines that summary judgment against Nationwide and in favor of the Bleiles is appropriate.

### 3. Aircraft, Auto or Watercraft Exclusion

The Bleiles also seek a summary judgment finding that the Policy's Aircraft, Auto or Watercraft Exclusion does not apply to preclude coverage for the claims in the Underlying Action. (Doc. # 46 at 8-16). Counts III and VI of the Amended Complaint allege the applicability of the exclusion (Doc. # 12 at ¶¶ 20-21, 26-27) and Nationwide previously argued in its Motion for Judgment on the Pleadings that the exclusion was applicable. (Doc. # 24 at 21).

Pursuant to this exclusion, the Policy does not provide coverage for any bodily injury arising out of the use of an automobile that is owned or operated by an insured. (Doc. # 38-2 at 23). Again, the Policy includes Kaloust's "employees" in the definition of an insured, with certain notable limitations. (Doc. # 38-3 at 3). Specifically, the Policy provides that Kaloust's "employees" are not insureds for "'Bodily injury' or 'personal injury' . . . to a co-'employee' while that co-'employee' is either in the course of his or her employment or performing duties relating to the conduct of your business." (Id. at 4).

In its Order denying Nationwide's Motion for Judgment on the Pleadings, the Court determined that the Underlying Complaint alleged only that Barbosa was an agent of Kaloust and not an "employee" as required for the exclusion to apply. (Doc. # 35 at 14-15). The Court also noted that Nationwide failed to address the Policy's limitation on the definition of an insured, stating that:

> [I]t may be the case that even if Bleile and Barbosa were deemed to be "employees" of Kaloust under the Policy as argued by Nationwide, the above-quoted provision could apply to remove Barbosa from the definition of an "insured," which in turn would render the Policy's Aircraft, Auto or Watercraft Exclusion inapplicable.

(Id. at 13 n.6).

Now on summary judgment, Nationwide does not include any arguments advocating the applicability of the exclusion and does not address the Bleiles' arguments against the exclusion in its response to their Motion.  Thus, Nationwide appears to, and effectively has, abandoned its reliance on and contention that the Policy's Aircraft, Auto or Watercraft Exclusion applies in this case.

As explained above, under Florida law, "[t]he burden rests on the insurer to show that exclusions in a policy apply."  Westport Ins. Corp. v. VN Hotel Grp., LLC, No. 11-14883, 2013 WL 1196957, at *2 (11th Cir. Mar. 22, 2013).  It is only after an insurer has proven the applicability of an exclusion does the burden return to the insured to prove the applicability of any exception to the exclusion.  Mid-Continent Cas. Co. v. Frank Casserino Const., Inc., 721 F. Supp. 2d 1209, 1215 (M.D. Fla. 2010).

By declining to present any arguments or evidence regarding the Policy's Aircraft, Auto or Watercraft Exclusion and by failing to respond to the Bleiles' arguments on the issue, the Court finds that Nationwide has failed to satisfy its burden of demonstrating the applicability of the exclusion.  Thus, the Court need not address the Bleiles'

arguments in opposition to the exclusion in light of Nationwide's failure to meet its initial burden of proof.

Accordingly, the Court determines that Nationwide has failed to satisfy its burden of proving that the Policy's Aircraft, Auto or Watercraft Exclusion applies in this case. Therefore, summary judgment in the Bleiles' favor is appropriate on this issue.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Nationwide's Motion to Strike (Doc. # 39) is **GRANTED IN PART** and **DENIED IN PART.**

(2) Nationwide's Motion for Final Summary Judgment (Doc. # 36) is **DENIED.**

(3) Stephen and Jackie Bleile's Dispositive Motion for Summary Judgment (Doc. # 38) is **GRANTED.**

(4) The Clerk is directed to enter judgment in favor of the Bleiles and against Nationwide.

**DONE** and **ORDERED** in Chambers in Tampa, Florida this <u>9th</u> day of April, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record