UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

      Plaintiff,

v.                      Case No.  8:12-cv-235-T-33MAP

KALOUST FINANCIAL, LLC, ET AL.,

      Defendants.
_____/

## ORDER

This cause is before the Court pursuant to Plaintiff Nationwide Mutual Fire Insurance Co.'s Motion for Clarification (Doc. # 49), filed on April 12, 2013, requesting clarification of the Court's Order entered on April 9, 2013 (Doc. # 47). In that Order, the Court granted in part and denied in part Nationwide's Motion to Strike (Doc. # 39), denied Nationwide's Motion for Final Summary Judgment (Doc. # 36), and granted Defendants Stephen and Jackie Bleile's Dispositive Motion for Summary Judgment (Doc. # 38). The Defendants have not filed a response to Nationwide's Motion for Clarification, and the time for doing so has now elapsed.

After due consideration, Nationwide's Motion for Clarification is granted, and the Court's April 9, 2013, Order as to the parties' Motions for Summary Judgment is superseded

and amended as detailed herein.[1]  For the reasons that follow, Nationwide's Motion for Summary Judgment is granted in part and denied in part, and the Bleiles' Motion for Summary Judgment is granted.

## I.   <u>Factual Background and Procedural History</u>

Nationwide issued a Business Owners Liability Insurance Policy to Defendant Kaloust Financial, LLC, Policy No. 77BO7268003001, with effective dates of July 11, 2008, to July 11, 2009 (the "Policy"). (Doc. # 12 at ¶ 11; Doc. # 12-2).  On or about May 20, 2009, Defendants Stephen and Jackie Bleile filed a wrongful death lawsuit in Missouri state court against Defendants Kaloust Financial, Richard Kaloust,[2] and Daniel Barbosa, among others, Case No. 09WA-CC0066-01 (the "Underlying Action"). (Doc. # 12 at ¶ 9; Doc. # 12-1).  A copy

———————————

[1] Nationwide's Motion for Clarification does not address or seek clarification of the Court's Order as it relates to Nationwide's Motion to Strike.  Thus, the Court's April 9, 2013, Order as to Nationwide's Motion to Strike stands as issued, and to prevent redundancy, is not reproduced herein. In sum, the Court granted the Motion to Strike as to the former testimony given by Barbosa in the Underlying Action, denied the Motion as to the deposition testimony given by Kaloust in the Underlying Action, and denied the Motion as to the deposition testimony given by Gregory Kempton in this case. (Doc. # 47 at 5-13).

[2] The parties collectively refer to Defendants Kaloust Financial, LLC, Richard Kaloust, and the Estate of Richard Kaloust as "Kaloust." The Court will likewise do so hereafter unless otherwise indicated.

of the fourth amended complaint filed by the Bleiles is attached to Nationwide's Motion for Summary Judgment as Exhibit A (the "Underlying Complaint"). (Doc. # 36-1).

The Underlying Complaint alleges that on or about January 7, 2009, the Bleiles' son, Mitchell Bleile, was a passenger in a vehicle operated by Barbosa. (Id. at ¶¶ 16-17). According to the Underlying Complaint, while approaching an intersection, Barbosa intentionally disregarded a stop sign and proceeded into the intersection without stopping, causing another vehicle to strike the passenger's side of Barbosa's vehicle. (Id. at ¶¶ 19, 20). As a result of the impact, Mitchell Bleile sustained serious injuries and subsequently died from those injuries. (Id. at ¶ 21).

The Underlying Complaint alleges that at the time of the accident, Barbosa was acting as an "agent" of Kaloust. (Id. at ¶ 17). The Underlying Complaint alleges counts for negligence and negligence per se against Kaloust and Barbosa and counts for negligent hiring, negligent retention, and negligent supervision against Kaloust. (Id. at 4-15). Kaloust and Barbosa have sought liability coverage from Nationwide for the Underlying Action pursuant to the Policy.

On February 3, 2012, Nationwide filed a three-count Complaint in this Court seeking declaratory judgment against

Defendants Kaloust Financial LLC and the Bleiles.[3] (Doc. # 1). Each "count" consists of a Policy exclusion which Nationwide contends precludes coverage. (Id.). Nationwide filed an Amended Complaint on March 12, 2012, which added Richard Kaloust, the Estate of Richard Kaloust, and Barbosa as Defendants and added identical Policy exclusion "counts" against Barbosa. (Doc. # 12).

Specifically, the Amended Complaint alleges that coverage is barred by the Policy's Workers' Compensation and Similar Laws Exclusion (Counts I and IV), by the Policy's Employers' Liability Exclusion (Counts II and V), and/or by the Policy's Aircraft, Auto or Watercraft Exclusion (Counts III and VI). (Id.). Thus, Nationwide seeks a declaration that it has no duty to defend Kaloust and/or Barbosa in the Underlying Action and has no duty to indemnify Kaloust and/or Barbosa for any damages awarded to the Bleiles in the Underlying Action, whether by judgment, verdict, settlement, or compromise. (Id. at 15, 19, 23, 26, 29-30, 33).

---

[3]   Nationwide asserts that the Bleiles are appropriately named as Defendants in this action because the Bleiles have an interest in any insurance coverage available to Kaloust and/or Barbosa should the Bleiles obtain a judgment against Kaloust and/or Barbosa in the Underlying Action. (Doc. # 12 at ¶ 14; Doc. # 36 at 8).

Barbosa failed to appear in this action and a Clerk's default was entered against him on July 31, 2012. (Doc. # 27).

Nationwide filed a Motion for Judgment on the Pleadings on July 30, 2012. (Doc. # 24). On December 18, 2012, the Court entered an Order denying Nationwide's Motion. (Doc. # 35). Nationwide and the Bleiles filed Motions for Summary Judgment on January 11, 2013. (Doc. ## 36, 38). These motions are now before the Court.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law.

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel

Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

III. **Analysis**

    A.   **The Duty to Defend and the Duty to Indemnify**

Under Florida law, which the Court applies in this diversity case, the duty to defend is broader than the duty to indemnify. Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009). The decision of whether an insurer has a duty to defend "is determined solely by the claimant's complaint if suit has been filed." Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 9-10 (Fla. 2004). An insurer's duty to defend against a legal action is triggered "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, Ins., 908 So. 2d 435, 442-43 (Fla. 2005).

In contrast to the duty to defend, the duty to indemnify is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury. Underwriters at Lloyds London v. STD Enters., 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005). In this context,

> insurance contracts are to be construed in a manner
> that is reasonable, practical, sensible, and just.
> . . . Terms used in a policy are given their plain
> and ordinary meaning and read in the light of the
> skill and experience of ordinary people.

7

> Provisions that exclude or limit liability of an
> insurer are construed more strictly than provisions
> that provide coverage.

U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., 279 F.

App'x 879, 880-81 (11th Cir. 2008)(internal citations

omitted). Furthermore, if provisions in an insurance contract

are "reasonably susceptible of more than one meaning, they are

ambiguous and construed in favor of the insured. That rule

applies if a genuine inconsistency, uncertainty, or ambiguity

in meaning remains after a review of the plain language." Id.

at 881.

**B.   The Policy's Relevant Provisions**

The Policy provides, in pertinent part, as follows:

**B. Exclusions**

1.   **Applicable to Business Liability Coverage**

This insurance does not apply to:

\* \* \*

d.   **Workers' Compensation and Similar
     Laws**

Any obligation of the insured under
a workers' compensation, disability
benefits    or    unemployment
compensation law or any similar law.

e.   **Employer's Liability**

"Bodily Injury" to:

8

(1) An "employee" of the insured
arising out of and in the
course of:

    (a) Employment by the
insured; or

    (b) Performing duties related
to the conduct of the
insured's business;

\* \* \*

This exclusion applies:

    (a) Whether the insured may
be liable as an employer
or in any other capacity;
and

    (b) To any obligation to
share damages with or
repay someone else who
must pay damages because
of the injury.

\* \* \*

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage"
arising out of the ownership,
maintenance, use or entrustment to
others of any aircraft, "auto" or
watercraft owned or operated by or
rented or loaned to any insured. Use
includes operations and "loading and
unloading."

(Doc. # 12-2 at 20, 22)(emphasis in original).  The Policy

additionally provides:

**C. Who Is An Insured**

9

1.  If you are designated in the Declarations
    as:

                    *  *  *

    c.  A limited liability company, you are
        an insured.  Your members are also
        insureds, but only with respect to
        the conduct of your business.  Your
        managers are insureds, but only with
        respect to their duties as your
        managers.

                    *  *  *

2.  Each of the following is also an insured:

    a.  Your "employees" . . . but only for
        acts within the scope of their
        employment by you or while
        performing duties related to the
        conduct of your business. However,
        none of these "employees" is an
        insured for:

        (1)  "Bodily injury" or "personal
             injury":

             (a)  To you, . . . or to
                  a co-"employee"
                  while that co-
                  "employee" is either
                  in the course of his
                  or her employment or
                  performing duties
                  related to the
                  conduct of your
                  business.

(Id. at 25-26)(emphasis in original).

The Policy defines "employee" as follows:

**F. Liability and Medical Expenses Definitions**

                    *  *  *

10

> 5.   "Employee" includes a "leased worker."
> "Employee" does not include a "temporary
> worker."

(Id. at 28)(emphasis in original).

### C.   **Applicability of the Policy's Exclusions**

#### 1.   **Employer's Liability Exclusion**

By its terms quoted above, the Policy does not apply to bodily injury to an "employee" of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business. (Id. at 20).  Thus, the applicability of this exclusion depends upon whether Mitchell Bleile was an "employee" of Kaloust. Nationwide asserts that Bleile was an employee of Kaloust, while the Bleiles aver that he was not.

The Policy's definition of "employee" provides only that the term "employee" includes a "leased worker" but does not include a "temporary worker." (Id. at 28).  There is no dispute that Bleile was not a "leased worker" nor a "temporary worker" as those terms are defined by the Policy.

The Underlying Complaint does not include any allegations regarding Mitchell Bleile's employment status with Kaloust. In their Answer filed in this case, the Bleiles have admitted only "that Mitchell Bleile was . . . an 'agent' of Richard Kaloust and Kaloust Financial, LLC, as that term is

understood, acting in the course and scope of that agency at the time of the subject accident." (Doc. # 14 at ¶ 17). However, nowhere does the Underlying Complaint, nor Nationwide's Amended Complaint, allege that Bleile was an employee of Kaloust.

As the Court has previously determined in denying Nationwide's Motion for Judgment on the Pleadings, allegations of a general principal-agent relationship are insufficient to establish an employer-employee relationship, because the terms "agent" and "employee" are not interchangeable under Florida law. Rather, an "'employee' is a subspecies of agent 'whose principal controls or has the right to control the manner and means of the agent's performance of work.' Thus, 'employee' is a narrower category than 'agent.'" Estate of Miller v. Thrifty Rent-A-Car Sys., Inc., 637 F. Supp. 2d 1029, 1037 (M.D. Fla. 2009)(quoting Restatement (Third) of Agency § 7.07(3)(a)).

Under Florida law, to determine whether a person is an employee or an independent contractor, a court considers the following factors:

> (1)  the extent of control which, by the agreement, the master may exercise over the details of the work;
> (2)  whether or not the one employed is engaged in a distinct occupation or business;

(3)   the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(4)   the skill required in the particular occupation;

(5)   whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(6)   the length of time for which the person is employed;

(7)   the method of payment, whether by the time or by the job;

(8)   whether or not the work is part of the regular business of the employer;

(9)   whether or not the parties believe they are creating the relationship of master and servant; and

(10)  whether the principal is or is not in business.

Cantor v. Cochran, 184 So. 2d 173, 174 (Fla. 1966); Univ. Dental Health Ctr., Inc. v. Agency for Workforce Innovation, 89 So. 3d 1139, 1140-41 (Fla. 4th DCA 2012); Victoria Select Ins. Co. v. RCVR Logistics Corp., No. 11-23976-CIV, 2012 WL 5818142, at *3 (S.D. Fla. Nov. 15, 2012)(citing Kane Furniture Corp. v. Miranda, 506 So. 2d 1061, 1063 (Fla. 2d DCA 1987)).[4]

---

[4]   The Court acknowledges that "the question of an employer/employee relationship is generally a question of fact, and therefore a question for the trier of fact." Pate v. Gilmore, 647 So. 2d 235, 236 (Fla. 1st DCA 1994). However, "[t]here are of course circumstances in which the undisputed facts will demonstrate the nonexistence of an employment relationship as a matter of law and thereby establish the proper basis for granting summary judgment. Thus, if the only reasonable view of the evidence compels the conclusion that an employment relationship did not exist, a court may determine the issue as a matter of law." Harper ex rel. Daley v. Toler,

"It has been said that the extent of control is the most important factor in determining whether a person is an independent contractor or an employee." Kane Furniture Corp., 506 So. 2d at 1064 (citations omitted). "If a person is subject to the control or direction of another as to his results only, he is an independent contractor; if he is subject to control as to the means used to achieve the results, he is an employee." Id. (citation omitted). "Whether the requisite degree of control is present can be resolved on summary judgment where the evidence is clear, undisputed, and capable of only one determination." Mais v. Gulf Coast Collection Bureau, Inc., No. 11-61936-CIV, 2013 WL 1899616, at *13 (S.D. Fla. May 8, 2013)(citing Johnson v. Unique Vacations, Inc., 498 F. App'x 892, 894 n.3 (11th Cir. 2012)).

Nationwide does not present any evidence establishing that Mitchell Bleile was an employee of Kaloust based on the factors outlined above. Indeed, all of Nationwide's arguments

---

884 So. 2d 1124, 1129 (Fla. 2d DCA 2004)(citations omitted). As set out herein, the Court determines that such situation is present in this case. Moreover, the Florida Supreme Court has expressly held that declaratory judgment statutes authorize a court to decide a liability insurer's obligations to defend and coverage for indemnity even when it is necessary to decide issues of fact in order to determine the declaratory judgment. Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 9 (Fla. 2004).

14

in its Motion and response, and the evidence Nationwide has filed in support, are focused on *Barbosa's* employment relationship with Kaloust, not Bleile's.  However, whether Barbosa was an employee of Kaloust is irrelevant to the issue of whether the Employer's Liability Exclusion applies, because the exclusion applies only if *Bleile* was an employee of Kaloust.

Barbosa's deposition testimony -- the only evidence filed by Nationwide in support of its Motion -- is insufficient to create a genuine issue of material fact regarding Bleile's employment status.  The deposition mentions Bleile only a handful of times, including testimony that Bleile was working out of one of Kaloust's offices (Barbosa Dep. Doc. # 37-1 at 8, 11) and that Richard Kaloust directed Barbosa to take Bleile on the trip during which the accident occurred (Id. at 11, 12).

However, the evidence supplied by the Bleiles in support of their Motion establishes that Bleile was not an employee of Kaloust.  In his deposition in the Underlying Action, Richard Kaloust was specifically questioned about Mitchell Bleile's employment status with Kaloust Financial and testified as follows:

15

```
Q:   On  January  7th  of  2009,  what  was  the
     relationship between Mitch Bleile and Kaloust
     Financial, LLC?
A:   There is no relationship.
Q:   Okay.  Is it true that on January 7th of 2009,
     Mitchell Bleile was not an agent of Kaloust
     Financial, LLC?
A:   Correct.  He was not an agent.
Q:   Okay.  Is it true, sir, that on January 7th of
     2009,  Mitch  Bleile  was  not  an  employee  of
     Kaloust Financial, LLC?
A:   Correct.  He was not an employee of Kaloust
     Financial.
Q:   And as a corporate represent (sic) of Kaloust
     Financial, LLC, is it your  testimony  that
     there  was  no  agency,  employment  or  business
     relationship between Mitch Bleile and Kaloust
     Financial, LLC, on January 7th of 2009?
A.   Correct.
```

(Kaloust Dep. Doc. # 38-17 at 2).  Kaloust further explained

that at the time of the accident, Mitchell Bleile was under

"precontract" with American United Life, meaning "in general

terms that he is in training to eventually become a career

agent."  (Id. at 9).  Kaloust testified that Bleile was hired

by an American United Life career agent, Christopher Labadie,

who was working out of Kaloust's offices at that time, and

that Bleile was given a cubicle in Kaloust's offices to work

out of. (Id. at 9-10).  Kaloust explained that Bleile went on

the trip to Missouri with Barbosa to gain more experience

after Kaloust personally asked him if he would like to go.

(Id. at 11).   However, Kaloust did not pay for the trip

expenses and informed Bleile that he would be responsible for

16

the costs of the trip.  (Id.). Finally, Kaloust testified that his company never provided any health insurance or other insurance benefits or workers' compensation coverage to any of the insurance agents working out of Kaloust's offices, including Bleile.  (Id. at 12).

Nationwide has not introduced any evidence to refute Kaloust's sworn testimony indicating that Bleile was not an employee of Kaloust at the time of the accident.  Nationwide has not introduced any other evidence such as tax forms, employment contracts, or the like, which call into question the accuracy of Kaloust's assertions.  Simply, Nationwide has not provided any evidence that raises a genuine issue of material fact as to whether Bleile was an employee of Kaloust based on any of the factors outlined above, including the most important factor of the extent of control.  Rather, the evidence shows that Kaloust did not exercise the necessary degree of control, or any control, over Bleile as required to show an employer-employee relationship.  Accordingly, based on the evidence supplied in this case, the Court determines that Bleile was not an employee of Kaloust, and, thus, the Policy's Employer's Liability Exclusion does not apply to preclude coverage for the claims in the Underlying Action.

17

2. **Workers' Compensation and Similar Laws Exclusion**

Nationwide also seeks a summary judgment determination that the Policy's Workers' Compensation and Similar Laws Exclusion precludes coverage for the claims in the Underlying Action, while the Bleiles request a ruling that the exclusion is inapplicable to the Underlying Action. The Court agrees with the Bleiles.

The Policy states that the insurance "does not apply to . . . any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (Doc. # 12-2 at 20). However, Nationwide has not supplied any evidence suggesting that the Bleiles are seeking to recover in the Underlying Action any amounts from Kaloust under any workers' compensation or similar law. Rather, the Underlying Complaint seeks damages only for Kaloust's alleged negligence resulting in their son's wrongful death. Nationwide has not provided any evidence indicating that the Bleiles have sought or received any workers' compensation benefits from Kaloust separate and apart from the Underlying Action.

Furthermore, Nationwide has not supplied any evidence establishing that the Bleiles would be entitled to recover

workers' compensation benefits on their son's behalf from Kaloust were they to file such a claim.   Indeed, Richard Kaloust testified in the Underlying Action that Kaloust did not provide any workers' compensation coverage for Mitchell Bleile. (Kaloust Dep. Doc. # 38-17 at 12).   Moreover, as discussed above, Nationwide has failed to establish that Bleile was even an employee of Kaloust, a requirement for recovering workers' compensation benefits from Kaloust. See Fink v. Fink, 64 So. 2d 770, 771 (Fla. 1953)("The employer-employee relationship is implicit in the whole scheme of the Workmen's Compensation Law . . . ."); Hamilton v. Shell Oil Co., 215 So. 2d 21, 22 (Fla. 4th DCA 1968)("[T]he relationship of employer-employee is essential to liability for workmen's compensation benefits."); State ex rel. Tri-County. Elec. Co-op. Ass'n v. Dial, 192 S.W. 3d 708, 711 (Mo. 2006)("As to the employer, the only two questions to determine whether workers' compensation applies are whether the injured person was an employee and whether the injury occurred 'by accident arising out of and in the course of . . . employment.'").

"When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable

interpretation." <u>Acosta, Inc. v. Nat'l Union Fire Ins. Co.</u>, 39 So. 3d 565, 574 (Fla. 1st DCA 2010)(citations omitted). Nationwide has failed to carry its burden here. Rather, the allegations in the Underlying Complaint establish that Kaloust's potential liability to the Bleiles arises only from the third-party, wrongful death negligence claims they have brought against Kaloust, and not from any obligation under a workers' compensation or similar law. Thus, the Court determines that the Policy's Workers' Compensation and Similar Laws Exclusion does not apply to preclude coverage in this case.

### 3. <u>Aircraft, Auto or Watercraft Exclusion</u>

The Bleiles also seek a summary judgment finding that the Policy's Aircraft, Auto or Watercraft Exclusion does not apply to preclude coverage for the claims in the Underlying Action. (Doc. # 46 at 8-16). Pursuant to this exclusion, the Policy does not provide coverage for any bodily injury arising out of the use of an automobile that is owned or operated by an insured. (Doc. # 12-2 at 22). Counts III and VI of the Amended Complaint allege the applicability of the exclusion (Doc. # 12 at ¶¶ 20-21, 26-27) and Nationwide previously argued in its Motion for Judgment on the Pleadings that the exclusion was applicable. (Doc. # 24 at 21).

However, now on summary judgment, Nationwide does not include any arguments advocating the applicability of the exclusion and does not address the Bleiles' arguments against the exclusion in its response to their Motion. Thus, Nationwide appears to, and effectively has, abandoned its reliance on and contention that the Policy's Aircraft, Auto or Watercraft Exclusion applies in this case.

As explained above, under Florida law, "[t]he burden rests on the insurer to show that exclusions in a policy apply." Westport Ins. Corp. v. VN Hotel Grp., LLC, No. 11-14883, 2013 WL 1196957, at *2 (11th Cir. Mar. 22, 2013). It is only after an insurer has proven the applicability of an exclusion does the burden return to the insured to prove the applicability of any exception to the exclusion. Mid-Continent Cas. Co. v. Frank Casserino Const., Inc., 721 F. Supp. 2d 1209, 1215 (M.D. Fla. 2010).

By declining to present any arguments or evidence regarding the Policy's Aircraft, Auto or Watercraft Exclusion and by failing to respond to the Bleiles' arguments on the issue, the Court finds that Nationwide has failed to satisfy its burden of demonstrating the applicability of the exclusion. Thus, the Court need not discuss the merits of the Bleiles' arguments in opposition to the exclusion in light of

Nationwide's failure to meet its initial burden of proof. Accordingly, the Court finds that the Policy's Aircraft, Auto or Watercraft Exclusion does not apply to preclude coverage in this case.

### D.   <u>**Duty to Defend and/or Indemnify Kaloust**</u>

The Policy's insuring agreement provides that Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which [the] insurance applies." (Doc. # 12-2 at 18). Furthermore, Nationwide "will have the right and duty to defend the insured against any 'suit' seeking those damages." (<u>Id.</u>).

There is no dispute that Kaloust is the named insured on the Policy and that the claims in the Underlying Action trigger coverage under the Policy. (<u>Id.</u> at 2). As explained above, none of the Policy exclusions invoked by Nationwide apply to preclude coverage in this case. Accordingly, pursuant to the unambiguous terms of the Policy, the Court determines that Nationwide does have a duty to defend Kaloust in the Underlying Action and to indemnify Kaloust for any sums Kaloust becomes legally obligated to pay as damages in the Underlying Action. Thus, the Bleiles' Motion for Summary

Judgment is granted and Nationwide's Motion for Summary Judgment is denied as to coverage for Kaloust.

### E.   Duty to Defend and/or Indemnify Barbosa

Pursuant to the Policy's insuring agreement provision quoted above, Nationwide has a duty to defend and indemnify Barbosa in the Underlying Action only if Barbosa qualifies as an "insured" under the Policy.  Again, the named insured in the Policy's Declarations is "Kaloust Financial LLC." (Id.). Regarding who is an insured, the Policy provides, in pertinent part, as follows:

**C. Who Is An Insured**

1.   If you are designated in the Declarations as:

    * * *

    c.   A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

    * * *

2.   Each of the following is also an insured:

    a.   Your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

(Id. at 25-26).

23

There is no dispute that Barbosa was not a member or manager of Kaloust Financial LLC. Thus, Barbosa qualifies as an insured under the Policy only if he is an "employee" of Kaloust. The Policy's definition of "employee" states only that the term "employee" includes a "leased worker" but does not include a "temporary worker." (Id. at 28). There is no dispute that Barbosa was not a "leased worker" nor a "temporary worker" as those terms are defined by the Policy. (Id.).

The Underlying Complaint alleges only that Barbosa and Kaloust were "engaged in a principal-agent relationship" at the time of the accident. (Doc. # 12-1 at ¶ 23). However, as noted above regarding Bleile, the Court has previously determined that allegations of a general principal-agent relationship are insufficient to establish an employer-employee relationship, because the terms "agent" and "employee" are not interchangeable under Florida law. (Doc. # 47 at 20)(quoting Estate of Miller, 637 F. Supp. 2d at 1037). Thus, the Underlying Complaint is not illuminative on the issue of whether Barbosa was an employee of Kaloust.

It is of course "well-settled in Florida that an insurer's duty to defend an action against its putative insured is determined by the allegations of the plaintiff's

24

[underlying] complaint." <u>Fed. Ins. Co. v. Applestein</u>, 377 So. 2d 229, 231 (Fla. 3d DCA 1979).   However, "an obvious exception must be made in those instances where, notwithstanding allegations in the petition to the contrary, . . . the alleged insured is not in fact an insured under the policy." <u>Nateman v. Hartford Cas. Ins. Co.</u>, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989).  As explained further in <u>Nateman</u>:

> The insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make the defendant an insured.  The mere allegations of the plaintiff's petition may not create an obligation on the part of the insurer to defend where no such obligation previously existed. . . . While we acknowledge the viability of the general rule that the allegations of the complaint determine an insurer's duty to defend, it would be imprudent and illogical to confer such a duty upon an insurer as to a party who is not an insured. . . . [T]he creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint, and as to *who* is an insured, the facts as they actually exist must be determinative.

<u>Id.</u> (emphasis in original)(citations omitted).

This case presents the exact circumstances for which the exception articulated in <u>Nateman</u> was created.   Here, as analyzed in depth below, the facts establish that Barbosa was not an employee of Kaloust; thus, Barbosa does not qualify as an insured under the Policy's terms.  As such, Nationwide

should not be required to provide a defense or indemnity for Barbosa, a stranger to the Policy, merely because the Underlying Complaint nebulously describes his relationship with Kaloust as a "principal-agent relationship." (Doc. # 12-1 at ¶ 23).

Courts have applied this exception in situations in which an underlying plaintiff purposely omits a crucial fact in the underlying complaint in an attempt to "plead into coverage." See Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp., 469 F. Supp. 2d 1214, 1220-21 (S.D. Fla. 2006)(finding no duty to defend when the underlying plaintiff deliberately failed to mention a fact in order to "plead into coverage"). However, the Nateman exception is perhaps even more appropriate here where the drafters of the Underlying Complaint, the Bleiles, do not appear to have been attempting to "plead into coverage" with their choice of language in the Underlying Complaint. To the contrary, the Bleiles actually acknowledge and argue in this case that "[b]ecause he was not an employee, Barbosa cannot constitute an 'insured' under the Policy . . ." (Doc. # 38 at 14-15).

Accordingly, the Court finds it appropriate to look beyond the Underlying Complaint to the facts of the case to

determine whether Barbosa was a Kaloust employee, and, thus, an insured under the Policy.

Richard Kaloust testified in his deposition in the Underlying Action that at the time of the accident he was a licensed insurance salesman working as a general agent for American United Life Insurance Company and Barbosa was working as a career agent for American United Life. (Kaloust Dep. Doc. # 38-17 at 1-2). Kaloust explained that Kaloust Financial, LLC was the name of the business through which he ran his agency. (Id. at 2). Kaloust's "General Agent's Contract" with American United Life provides that "the General Agent may recruit, train, and supervise agents and brokers for [American United Life] in Florida." (Doc. # 38-7 at 2). Kaloust testified that Kaloust Financial "housed" approximately ten American United Life career agents, including Barbosa, who had an office in and worked out of Kaloust's facility. (Kaloust Dep. Doc. # 38-16 at 8, 12).

Barbosa's "Career Agent's Contract" with American United Life states that "the Agent is now and shall in the future be an independent contractor of [American United Life]. Nothing contained in this contract shall be construed to create the relationship of employer and employee between [American United Life] and the Agent." (Doc. # 38-6 at 2). Furthermore,

27

Barbosa's contract states that "the Agent shall not enter into an employment contract or agreement with any individual or organization while he is a[n] Agent without the prior written approval of [American United Life]." (Id.).

The record does not contain any evidence of a written employment contract entered into between *Kaloust* and *Barbosa*, nor any evidence indicating that American United Life authorized Barbosa to enter into such an employment agreement with Kaloust. Nevertheless, even if the record reflected an employment or independent contractor agreement between Kaloust and Barbosa, any "descriptive labels employed in agreements are not determinative as to the actual legal relationship between the parties." Breed Techs., Inc. v. AlliedSignal, Inc., 861 So. 2d 1227, 1232 (Fla. 2d DCA 2003).

Rather, as previously noted, the Florida Supreme Court has adopted the test outlined in the Restatement (Second) of Agency § 220 for determining whether a person is an employee or an independent contractor based on a list of ten non-exclusive factors.[5]  See Cantor, 184 So. 2d at 174; Univ.

_____

[5] Again, these factors are: (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by

<u>Dental Health Ctr, Inc.</u>, 89 So. 3d at  1140-41.  Comment (h)
to Restatement § 220 provides guidance in interpreting these
factors:

> The relation of [employer] and [employee] is
> indicated by the following factors: an agreement
> for close supervision or de facto close supervision
> of the servant's work; work which does not require
> the services of one highly educated or skilled; the
> supplying of tools by the employer; payment by hour
> or month; employment over a considerable period of
> time with regular hours; full time employment by
> one employer; employment in a specific area or over
> a fixed route; the fact that the work is part of
> the regular business of the employer; the fact that
> the community regards those doing such work as
> servants; the belief by the parties that there is
> a[n] [employer] and [employee] relation; an
> agreement that the work cannot be delegated.

Restatement (Second) of Agency § 220, cmt. h.

"In addition to the factors enumerated in the
Restatement, the 'provision of employee benefits' has been
recognized as a factor militating in favor of a conclusion
that an employment relationship exists." <u>Harper ex rel. Daley</u>,

---

a specialist without supervision; (4) the skill required in
the particular occupation; (5) whether the employer or the
workman supplies the instrumentalities, tools, and the place
of work for the person doing the work; (6) the length of time
for which the person is employed; (7) the method of payment,
whether by the time or by the job; (8) whether or not the work
is part of the regular business of the employer; (9) whether
or not the parties believe they are creating the relationship
of master and servant; and (10) whether the principal is or is
not in business. <u>Kane Furniture Corp.</u>, 506 So. 2d at 1063
(citing Restatement (Second) of Agency § 220).

884 So. 2d at 1131 (quoting <u>Cmty. for Creative Non-Violence v.</u>
<u>Reid</u>, 490 U.S. 730, 752 (1989)).  The Court will analyze this
factor along with each of the Restatement factors below.

> **(1)  The extent of control which, by the agreement,**
> **the master may exercise over the details of**
> **the work**

"It has been said that the extent of control is the most
important factor in determining whether a person is an
independent contractor or an employee." <u>Kane Furniture Corp.</u>,
506 So. 2d at 1064 (citations omitted). "If a person is
subject to the control or direction of another as to his
results only, he is an independent contractor; if he is
subject to control as to the means used to achieve the
results, he is an employee." <u>Id.</u> (citation omitted). "Whether
the requisite degree of control is present can be resolved on
summary judgment where the evidence is clear, undisputed, and
capable of only one determination."  <u>Mais</u>, No. 11-61936-Civ,
2013 WL 1899616, at *13 (citing <u>Johnson</u>, 498 F. App'x at 894
n.3).

Regarding the extent of control Kaloust Financial held
over Barbosa, Kaloust testified that Kaloust Financial
provided education and training through American United Life
to its career agents, including Barbosa.  (Kaloust Dep. Doc.
# 38-16 at 15; # 38-17 at 3-4).  However, Kaloust testified

that Kaloust Financial did not schedule Barbosa's appointments, make Barbosa's travel arrangements, or pay for his trip expenses. (Kaloust Dep. Doc. # 38-17 at 7, 11). Indeed, Barbosa testified in his own deposition that he created and controlled his itinerary and that while on a trip, he could vary from his itinerary as needed. (Barbosa Dep. Doc. # 37-1 at 25).

Moreover, Kaloust testified that he recommended that the career agents set 8 to 12 appointments per week in order to be successful, but there was no minimum requirement for the number of appointments the career agents were required to conduct per week. (Kaloust Dep. Doc. # 38-16 at 17-18). While Kaloust would provide some appointment "leads" to the career agents, the career agents would also purchase and provide their own leads. (Id. at 17; Doc. # 38-17 at 7).

Additionally, Kaloust explained that career agents were free to sell insurance policies for other companies besides American United Life and, as such, Barbosa also sold insurance policies for "Prudential and Avalon." (Kaloust Dep. Doc. # 38-16 at 9, 12). According to Kaloust, he did not earn a commission directly from the sales of the career agents, but would receive an "override" for any policies sold for American United Life or through an affiliated brokerage firm called

31

Ashe. (Id. at 11-13).  Thus, according to Kaloust, he would not receive any compensation for the policies that Barbosa sold for Prudential.  (Id. at 12).

Additionally, Kaloust's General Agent's Contract with American United Life did not allow Kaloust the authority to hire or terminate career agents, but, rather, provides that American United Life "shall have the sole right to determine when an agent or broker is under the recognized supervision of the General Agent." (Doc. # 38-7 at 2).

Based on the evidence detailed above, including the fact that Kaloust did not control Barbosa's sales schedule or number of appointments, did not pay for Barbosa's expenses, and could not terminate Barbosa, coupled with the fact that Barbosa was free to sell policies for other companies for which Kaloust would not receive any compensation, the Court determines that Kaloust did not possess the requisite degree of control over Barbosa to establish an employer-employee relationship.

### (2)   <u>Whether or not the one employed is engaged in a distinct occupation or business</u>

According to Kaloust's sworn testimony, Kaloust Financial employed only four other people besides Kaloust, who all worked in various general administrative capacities, including

reception, filing, organization, and office management. (Kaloust Dep. Doc. # 38-16 at 6-7). In contrast, the record evidence, including Barbosa's Career Agent's Contract in particular, shows that Barbosa signed a contract and was engaged in business as an insurance career agent for American United Life. Thus, the Court find that Barbosa was engaged in a distinct occupation, which supports a finding that he was an independent contractor and not a Kaloust employee.

### (3) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision

The record evidence does not shed light on this point regarding whether an insurance career agent in this locality would usually work under the direction of an employer or whether one would normally be considered a specialist who would work without supervision.

### (4) The skill required in the particular occupation

Unskilled labor is typically performed by employees while skilled labor is often performed by independent contractors. Restatement (Second) of Agency § 220, cmt. i. According to Kaloust's testimony, in order to become a career agent, an individual would first have to study for and pass the appropriate state tests to obtain an insurance sales license

and then would have to earn a certain minimum level of sales commissions. (Kaloust Dep. Doc. # 38-17 at 10-11). Furthermore, career agents were provided various types of training, including training related to acquiring prospects, insurance products, sales, and regulations. (Kaloust Dep. Doc. # 38-16 at 18; Doc. # 38-17 at 3-4). Additionally, qualified agents could attend a "Fast Start Academy" at One America's home office to learn the "ins and outs" of One America over a three day period. (Kaloust Dep. Doc. # 38-17 at 4).

Based on this evidence, it appears that working as a career agent required some level of training and skill, which generally weighs against finding an employer-employee relationship. However, the level of required training does not appear high enough, nor is the level of necessary skill specialized enough, to be clearly indicative of an independent contractor relationship. Accordingly, the Court finds that this factor stands in equipoise on the issue.

**(5)   Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work**

Here, the evidence shows that Kaloust Financial provided career agents, including Barbosa, with an office, desk, limited administrative support, "supplies, . . . materials, applications, paper, pens, . . . prospectuses, all One America

34

products and guidelines," and occasionally sales leads.
(Kaloust Dep. Doc. # 38-16 at 8, 15).  However, career agents
were required to pay for their own expenses (Kaloust Dep. Doc.
# 38-17 at 11); thus, Barbosa used his own computer and his
own car for his sales trips and paid for air fare, hotels,
gas, and food (Barbosa Dep. Doc. # 37-1 at 29).  Thus, while
Kaloust provided the place of work and some administrative
supplies, the evidence shows that Barbosa supplied a much
greater portion of the tools and instrumentalities for his
work.  Therefore, this factor militates in favor of finding
that Barbosa was an independent contractor.

### (6)   The length of time for which the person is employed

At the time of the accident in January of 2009, Barbosa
had been working as a career agent out of Kaloust Financial's
office for nearly four years, since March or April of 2005.
(Id. at 20).  As noted in Comment (h) to Restatement § 220,
employment over a considerable period of time favors a finding
of an employee-employer relationship.  While four years is not
insignificant, the Court finds that it is not so considerable
as to definitively indicate an employer-employee relationship.
Thus, this factor is neutral.

### (7)   The method of payment, whether by the time or by the job

According to Kaloust, Kaloust Financial did not pay the career agents, including Barbosa, for their sales or otherwise; rather, Barbosa would receive a percentage commission from American United Life for any sales he made of its products. (Kaloust Dep. Doc. # 38-16 at 10). Barbosa also testified that any commission checks he received came from American United Life or One America and not from Kaloust Financial. (Barbosa Dep. Doc. # 37-1 at 22, 23). Additionally, the Bleiles have filed copies of Barbosa's W-2 Wage and Tax Statement forms for each year from 2007 to 2009, which reflect American United Life as Barbosa's employer and wage provider. (Doc. # 38-8 at 2, 4, 6).

Accordingly, because the evidence establishes that Kaloust did not pay Barbosa for the work he performed as a career agent, this factor militates against a finding of an employer-employee relationship between the two.

> **(8)** **Whether or not the work is part of the regular business of the employer**

Pursuant to Kaloust's General Agent's Contract with American United Life, in addition to recruiting career agents and training them to sell insurance policies, Kaloust himself was required to "solicit applications for the Company's individual and group life, health, and annuity policies and

36

contracts, both personally and through the efforts of his agents and brokers." (Doc. # 38-7 at 3). Thus, the evidence shows that the work done by Barbosa in selling insurance policies was part of the regular business of Kaloust, which weighs in favor of finding an employer-employee relationship.

> **(9)** **Whether or not the parties believe they are creating the relationship of master and servant**

Kaloust testified consistently as to his belief that Barbosa was an independent contractor of American United Life and not a Kaloust employee. (Kaloust Dep. Doc. # 38-16 at 8, 9, 11, 18, 19; Doc. # 38-17 at 2, 5). Conversely, Barbosa maintained during his deposition his belief that Kaloust was his employer. (Barbosa Dep. Doc. # 37-1 at 5, 8-10, 13-14, 17-18, 20). However, Barbosa eventually explained that this conclusion was based on Barbosa's belief that, because Kaloust was his supervisor, he was therefore necessarily Barbosa's employer. (Id. at 24). Notably, however, when Barbosa was asked if he agreed that "Mr. Kaloust just worked for the same company as you, but you felt like he was your boss within the company," Barbosa replied affirmatively. (Id.). Accordingly, the evidence on this factor tends to show that Kaloust and Barbosa did not believe they were creating an employer-employee relationship with one another.

**(10) Whether the principal is or is not in business**

As stated in <u>Kane Furniture Corp.</u>, "the relevance of this factor is obscure, but for what it is worth, [Kaloust] is in business." 506 So. 2d at 1066 (quoting <u>D.O. Creasman Elecs. v. State Dep't of Labor & Emp't Sec.</u>, 458 So. 2d 894, 898 (Fla. 2d DCA 1984)). However, given the ambiguous relevance of this factor, the Court will consider it neutral.

**(11) Provision of employee benefits**

Regarding the additional factor of the "provision of employee benefits," which Florida courts have "recognized as a factor militating in favor of a conclusion that an employment relationship exists," <u>Harper ex rel. Daley</u>, 884 So. 2d at 1131, Barbosa testified that Kaloust did not provide any benefits to Barbosa including a 401-K or pension, insurance, vacation pay, sick leave, disability insurance or worker's compensation insurance. (Barbosa Dep. Doc. # 37-1 at 30). Kaloust likewise agreed that Kaloust Financial did not provide any benefits to the career agents who worked out of Kaloust's office. (Kaloust Dep. Doc. # 38-16 at 19; Doc. # 38-17 at 12). Thus, the Court finds that this consideration also weighs against finding an employee-employer relationship.

In sum, the Court finds that seven of the factors indicate that Barbosa was an independent contractor, three are

neutral, and only one factor favors a finding of an employer-employee relationship.  Notably, however, the most important factor regarding the extent of control, or lack thereof, that Kaloust wielded over Barbosa militates against finding that Barbosa was an employee of Kaloust, as do the significant factors that Kaloust did not provide wages or benefits to Barbosa.  Therefore, the Court determines that the evidence in this case, when measured against the Restatement criteria and other relevant considerations, leads to the conclusion that Barbosa was an independent contractor and not an employee of Kaloust.

Accordingly, the Court determines that because Barbosa was not an employee of Kaloust, he is not an insured under the Policy's definition for same, and, thus, coverage is not triggered for Barbosa under the Policy.  Therefore, Nationwide does not have a duty to defend or indemnify Barbosa in the Underlying Action and Nationwide's Motion for Summary Judgment is granted as to coverage for Barbosa.[6]

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

---

[6]  The Bleiles moved for summary judgment only as to Nationwide's duty to defend and indemnify Kaloust and, thus, their Motion is not implicated in the Court's ruling regarding Nationwide's duty to defend and indemnify Barbosa.

(1) Nationwide's Motion for Clarification (Doc. # 49) is **GRANTED** and the Court's April 9, 2013, Order (Doc. # 47) as to the parties' Motions for Summary Judgment is superseded and amended as detailed herein.

(2) Nationwide's Motion for Final Summary Judgment (Doc. # 36) is **DENIED** as to coverage for Kaloust and **GRANTED** as to coverage for Barbosa.

(3) Stephen and Jackie Bleile's Dispositive Motion for Summary Judgment (Doc. # 38) is **GRANTED.**

(4) The Clerk is directed to enter an amended Judgment declaring that:

　　(a) Nationwide has a duty to defend and a duty to indemnify Defendants Kaloust Financial LLC, Richard Kaloust, and the Estate of Richard Kaloust in the Underlying Action, Case No. 09WA-CC0066-01, pending in the Circuit Court of St. Francois County, Missouri; and

　　(b) Nationwide does not have a duty to defend or a duty to indemnify Defendant Daniel Barbosa in the Underlying Action, Case No. 09WA-CC0066-01, pending in the Circuit Court of St. Francois County, Missouri.

**DONE** and **ORDERED** in Chambers in Tampa, Florida this <u>26th</u>
day of June, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record

41